BOARD OF COM'RS OF PAWNEE COUNTY v. BOARD OF COM'RS OF OSAGE COUNTY.

No. 29441. Feb. 11, 1941.

Rehearing Denied March 4, 1941.

*110 P. 2d 898.*

Horace Ballaine and McCollum & McCollum, all of Pawnee, for plaintiff in error.

Sim T. Carman, County Atty., of Osage County, of Pawhuska, for defendant in error.

OSBORN, J. Pawnee county, acting by and through the board of county commissioners, instituted this suit in the district court of Osage county against the board of county commissioners of Osage county, wherein plaintiff sought recovery of $28,687.56 from said county, the same being one-half of the cost of construction of a bridge across the Arkansas river, which river constituted the boundary line between said counties. Upon application of plaintiff, a change of venue was granted to Washington county, where the cause was tried to the court and judgment entered in favor of the defendant, from which judgment plaintiff has appealed. The parties will be referred to as they appeared in the trial court.

Plaintiff alleged that a certain bridge across the Arkansas river, commonly known as the Blackburn bridge, is an intercounty bridge; that the Arkansas river forms the boundary line between Pawnee county and Osage county, and that the bridge for more than a quarter of a century had been maintained jointly by the two counties and on several occasions had been washed out and rebuilt at the joint expense of the counties; that in the year 1923 said bridge was destroyed by flood waters; that on April 8, 1924, Pawnee county voted bridge bonds in the sum of $180,000, and that a portion of the funds to be derived therefrom was to be allotted to the Blackburn bridge; that in the year 1926 Pawnee county let a contract for the construction of concrete piers and paid for the construction thereof in the sum of $36,242.11, the last payment on said contract being made March 5, 1928; that in May, 1932, Pawnee county entered into a contract for the construction of the steel portion of said bridge on the piers theretofore built, and in pursuance thereof the steel portion of said bridge was constructed and paid for by Pawnee county in the sum of $33,782.78; that on December 31, 1934, the board of county commissioners of Osage county awarded a contract for flooring the bridge and the floor was laid; that said board of county commissioners also authorized the building of approaches at both ends of the bridge and as the cost of the flooring and building of the approaches said Osage county paid $12,649.78. The bridge was completed on March 1, 1936. It was alleged that one-half of the total cost of the bridge was $41,337.34; that Osage county had paid the sum of $12,649.78, and that there was due from Osage county to Pawnee county the sum of $28,687.56; that a claim for said sum had been filed and disallowed. Plaintiff sought judgment for said last-named amount together with interest thereon.

Plaintiff's first proposition for reversal of the judgment is as follows:

"The claim of Pawnee county against Osage county is an absolute statutory liability. After Pawnee county constructed the concrete piers and abutments and the steel structure, Osage county built the approaches to the bridge on both the Pawnee county side and the Osage county side and floored the bridge, thereby ratifying and adopting the work theretofore done by Pawnee county, and is estopped from denying liability for the balance due Pawnee county."

At the outset it may be said that no contention is made that there is any contractual liability from Osage county to Pawnee county. The record discloses that the officials of Pawnee county requested the board of county commissioners of Osage county to participate in the cost of construction of the bridge, and that they refused to do so for the reason that they did not think the bridge was necessary.

It is the plaintiff's position that the liability which it seeks to enforce is purely statutory and its contention is based upon section 10364, O. S. 1931, 69 Okla. St. Ann. § 182, which is as follows:

"The county commissioners of any two or more adjoining counties may unite in the construction of a bridge, or bridges, over any stream forming the boundary line between such counties or flowing from one county into the other, and the said bridge, or bridges, may be located by them at any point, or points, on said stream not more than two miles from the boundary line of said counties. If the commissioners of each county so situated find that a bridge across such stream is necessary and approve its construction, it shall be the duty of said boards of county commissioners, and each of them, to at once proceed with the construction of said bridge. Said counties shall bear equally the cost of the construction of said bridge, or bridges; such construction shall be under the supervision of said boards of county commissioners, which boards shall act in conjunction in such construction; and said bridge, when so constructed, shall remain the property of said counties respectively, *and shall be jointly maintained by said counties.*"

In addition to the statute, plaintiff cites various authorities to the effect that the duty to keep a bridge in repair includes the duty of rebuilding it when for any reason it is destroyed. It is argued that maintenance and repair are practically synonymous, and that the statute should be construed to hold that there was a statutory obligation upon Osage county to bear its proportionate cost of replacing the bridge which had been destroyed by the flood some years previous to the date of the construction of the new bridge.

In order to determine whether or not the rule contended for is applicable, we must refer to portions of the evidence adduced at the trial of the cause. It is conceded that the new bridge was not constructed at the exact site of the bridge which had been destroyed, but was located approximately 300 feet down the river from where the bridge had formerly been located. In this connection the record discloses that it was necessary to secure rights of way and to build new roads for a short distance on either side of the bridge in order to provide access to the same. As to the period of time that elapsed from the date of destruction of the former bridge and the construction of the new bridge, the evidence is not clear. Two witnesses testified that the former bridge was destroyed in 1913, but these witnesses were unable to state with certainty as to whether or not the old bridge was repaired and used after that date. Mr. Joe Taylor, one of the county commissioners of Osage county, testified that he was certain that there had not been a passable or traveled bridge at Blackburn since 1920, prior to the construction of the bridge herein involved. After due consideration of these facts, we cannot say that the construction of the bridge herein involved constituted "maintenance," even under a most liberal interpretation of that term as it is used in the statute. The fact that at one time there was a bridge in the vicinity of the bridge involved herein did not operate to change a construction project to a project of maintenance or repair. The facts in the instant case are clearly distinguishable from the facts involved in the cases relied upon by plaintiff.

Considerable emphasis is placed upon the fact that Osage county built the approaches on both sides of the bridge and floored the bridge. It is argued that such acts on the part of the officials of Osage county operated as a ratification and adoption of the work done by Pawnee county and fixed the status of the bridge as a jointly-owned bridge, thereby making Osage county liable for its one-half of the cost of construction. We have never departed from the rule that one who demands payment of a claim against a county must show some statute authorizing it, or that it arises from some contract, express or implied, which is authorized by law. See Schulte v. Board of Commissioners of Pontotoc County, 122 Okla. 205, 253 P. 494. It is not sufficient that the services performed were beneficial. Board of Commissioners of Grant County v. Ridings, 100 Okla. 62, 227 P. 96. It thus appears that there are but two classes of obligations against counties which are recognized by the law, obligations fixed by statute, and those fixed by contracts

which are authorized by law. We are not aware of any case where acts of ratification, adoption, or acquiescence on the part of public officials have operated to create a legal liability against a subdivision of the state where no such liability existed prior to such acts of ratification, acquiescence, or adoption.

Having taken the view that there is no liability against Osage county in favor of Pawnee county, it becomes unnecessary to consider other propositions presented and argued in the briefs.

Justice HURST having disqualified, Hon. L. M. POE of Tulsa was appointed as a Special Justice to sit in his stead.

The judgment is affirmed.

WELCH, C. J., CORN, V. C. J., and GIBSON, DAVISON, and ARNOLD, JJ., and POE, Special Justice, concur. RILEY and BAYLESS, JJ., absent.